# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA,
## INDIANAPOLIS DIVISION

| | |
|---|---|
| MARVELLA G. WALLS,<br><br>    Plaintiff,<br><br>  vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>    Defendant. | CAUSE NO. 1:13-cv-554-DKL-JMS |

## ENTRY

The plaintiff, Marvella G. Walls, applied for disability benefits under the Social Security Act. The defendant Commissioner of Social Security denied her claims and she filed this suit for judicial review of those denials.

## Standards

Judicial review of the Commissioner=s factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. ▪ 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that

1

Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 905. A person will be determined to be disabled only if her impairments "are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(a)(3)(G).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy. 42 U.S.C. § 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an

4

administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. ▪ 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Background**

Ms. Walls applied for benefits under both the disability-insurance and supplemental-security-income programs of the Social Security Act, alleging a disability that began in July 2008. Her claims were denied on initial and reconsideration reviews and she requested a hearing before an ALJ, which was held in October 2011. Ms. Walls testified, as did a vocational expert and two medical experts: Dr. Olive, a licensed clinical psychologist, and Dr. Fishcer, board-certified in family-practice medicine. The ALJ issued his decision denying Ms. Walls' claims later that month. In January 2013, the Commissioner's Appeals Council denied Ms. Walls' request to review the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner and the one that the Court reviews.

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (▪ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

At step one of the sequential evaluation process, the ALJ found that Ms. Walls has not engaged in substantial gainful employment since her alleged onset date in July 2008. At step two, he found that she has the following severe impairments: history of lower extremity swelling, hypertension, hyperlipidemia, history of congestive heart failure, obstructive sleep apnea, obesity, diabetes mellitus, affective disorders, post-traumatic-stress disorder, substance-abuse disorders, and borderline intellectual functioning. At step three, he found that she did not have an impairment or combination of severe or non-severe impairments that, alone or in combination, met or equaled any of the listings of impairments.

For the purposes of steps four and five, the ALJ determined Ms. Walls' RFC. He found that she can perform at the sedentary level with additional exertional, postural, and environmental limitations. He also found that her work must be limited to simple and repetitive tasks to account for her mental impairments.

At step four, he found that this RFC prevents her from performing any of her past relevant work. At step five, relying on the testimony of the vocational expert, he found that significant numbers of jobs exist in the national economy that she can perform and, therefore, she is not disabled.

**Discussion**

Ms. Walls argues that the ALJ erred in his listings determination and in his evaluation of her mental RFC.

**1. Listing 12.06 finding.** Ms. Walls argues that the ALJ's finding that her mental impairments did not meet or medically equal the criteria of listing 12.06 for anxiety-related disorders was erroneous.

Listing 12.06 consists of three parts: an introductory description of the disorder, "Paragraph A" medical criteria consisting of a set of medical findings that substantiate the presence of the disorder, and "Paragraph B" and "Paragraph C" severity criteria consisting of sets of impairment-related functional limitations that are incompatible with the ability to do any gainful employment. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 12.00A. A claimant can satisfy listing 12.06 by meeting or equaling either Paragraphs A and B or Paragraphs A and C. Ms. Walls contends that she satisfies listing 12.06 by the latter and argues that the ALJ's Paragraph C finding was perfunctory and erroneous.

Paragraph C has only one severity criteria: "complete inability to function independently outside the area of one's home." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, § 12.06C. The ALJ's Paragraph C explanation was: "Finally, the evidence fails to demonstrate the claimant is completely unable to function independently outside the area of her home." (R. 16.) Ms. Walls argues that this one sentence is perfunctory and fails to support his listing 12.06C finding. She points to several items in the record that she contends prove that she met or equaled lisiting 12.06C: (1) her reports in August 2009 that she was experiencing nightmares of prior abuse and paranoia; (2) Dr. Herman, one of the two consulting examining psychologists, noted that she "appeared rather anxious" during his May 2010 consultative examination; (3) she reported to Dr. Herman

7

that she has a history of intrusive thought, primarily about prior abuse; at the time of his examination, she was living in a transitional group home; and that she does no cooking, and is not allowed to do any cooking, because she has a tendency to forget and leave the stove or oven on and cause fires; (4) Florence Johnson, a staff member at the transitional group home, reported, *inter alia*, that Ms. Walls does not do some chores at the home,[2] requires reminders to bathe and keep her personal living space clean, doesn't leave the house alone, and has had crying spells three days out of the week; (5) although Ms. Walls left the transitional group home in December 2010, and lives in her own apartment, she still receives a range of supportive services; and (6) based on an intake interview with Ms. Walls, a clinician at Midtown Community Mental Health Center wrote that Ms. Walls' psychiatric symptoms "impair her ability to have positive relationships with others and engage in community activities. This has resulted in [Ms. Wells] experiencing chronic homelessness, unemployment, and a significant decrease in her ability to function independently in the community." (R. 408.)

While the Court agrees that the ALJ's one-sentence expression of his listing 12.06C finding was conclusory and perfunctory, *as it is stated in the listings section of his decision*, his later discussion of the evidence relating to her mental impairments, including her anxiety, and their resulting functional limitations provides his rationale for finding that she has the RFC for maintaining substantial gainful activity and that her anxiety does not

---

[2] The staff member, Florence Johnson, told a state-agency employee in response to a third-party contact that Ms. Walls does not cook for herself or do her own laundry at the transition group home. Ms. Johnson added, however, that she isn't sure if Ms. Walls is able to cook and simply doesn't want to or if she does not know how, and that she is not sure why Ms. Walls does not do her own laundry. (R. 201.)

8

render her homebound. The Court is able to trace the path of his reasoning. While the items of evidence cited by Ms. Walls do not strike the Court as clear substantial evidence that Ms. Walls was completely unable to function independently outside of her home due to an anxiety disorder, it is the ALJ who must make that determination and, based on his decision as a whole, it is apparent that he found that, despite her mental impairments, including anxiety, she is able to function independently enough outside her home in order to maintain employment. Although the statement of this conclusion in the listings section of his decision was perfunctory, his discussion of the relevant evidence in other parts of his decision can be considered applicable to his listing finding because ALJs' decisions should be read as a whole. *See Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 209).

Ms. Walls has not shown that the ALJ failed to adequately articulate his listing 12.06C finding.

**2. Mental RFC.** Ms. Walls argues that the ALJ's assessment of her mental RFC is not supported by substantial evidence and is legally erroneous. She asserts several errors in his assessment.

**a. Failed to account for deficiencies in concentration, persistence, or pace.** Ms. Walls argues that the ALJ failed to incorporate her deficiencies in concentration, persistence, or pace in his hypothetical to the vocational expert ("VE"). She argues that his RFC restriction to simple and repetitive tasks violates the teaching of *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010), that a VE must be oriented to all of a

claimant's limitations, including concentration, persistence, and pace, and that a restriction to simple and repetitive work does not necessarily address those deficiencies.

Although the Court of Appeals for the Seventh Circuit held in *O'Connor–Spinner* that a VE must be specifically informed of limitations in concentration, persistence, or pace, it did not go so far as to mandate the use of the words "concentration," "persistence," or "pace" or to forbid the use of a restriction to simple and/or repetitive work to account for such deficiencies. If the record reflects that the VE was already aware of the claimant's limitations— for example, by being present at the hearing and hearing the testimony and discussion, or by reviewing the record— or if "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the plaintiff's limitation would be unable to perform," then the ALJ does not err by not using the terms concentration, persistence, or pace. *Id.* In the present case, the ALJ adopted the opinions of the state-agency psychological experts and Dr. Henry, one of the consulting examining psychologist, that, considering Ms. Walls' problems with concentration, persistence, or pace, she was able to perform simple, repetitive tasks. They thus translated her deficiencies into a limitation to simple, repetitive work and the ALJ provided that translated limitation to the VE. There was no violation of *O'Conner-Spinner*.

**b. Ignored Dr. Herman's opinion.** Ms. Walls argues that the ALJ erred when he "wholly ignored" the opinion of Dr. Herman, the first consultative psychological examiner. The ALJ did not ignore Dr. Herman's examination findings or opinion, having discussed them at least twice in his decision. (R. 15 and 20 (Ex. 2F).) Ms. Walls' cites Dr.

10

Herman's opinion that "psychotic symptoms appear to negatively affect her comprehension, memory, concentration, persistence *and social interaction*." (*Plaintiff's Brief* at 22; R. 316.) The ALJ accepted that Ms. Walls has a deficit in social interaction and discussed more detailed record evidence and opinion of that deficit. Ms. Walls fails to show why this unspecific statement by Dr. Herman that her social interaction is 'negatively affected' merited specific address.

**c. Failed to discuss state-agency reviewers' opinions regarding social and work interaction.** Ms. Walls argues that, although the ALJ gave "some weight" to the opinions of the state-agency medical-expert reviewers, he did not discuss their conclusions that she "was only capable of interacting 'on a superficial basis . . . with co-workers and supervisors.'" (*Plaintiff's Brief* [doc. 24] at 22.) Actually, the agency experts wrote:

> While it is expected that the claimant would be unable to complete complex tasks, claimant is able to complete repetitive tasks on a sustained basis without special consideration. The evidence suggests that claimant can understand, remember, and carry-out simple tasks without special considerations in many work environments. The claimant can relate on *at least* a superficial basis on an ongoing basis with co-workers and supervisors. *The claimant can attend to tasks for sufficient periods of time to complete tasks. The claimant can manage the stresses involved with simple work.*

(R. 356 (emphases added).) Thus, the state-agency experts did not opine that Ms. Wall could interact "only" on a superficial basis, but "at least" on a superficial basis and that her interaction limitation did not prevent the performance of simple work. Moreover, the ALJ's decision make clear that, while he gave "some weight" to the state-agency experts' opinions on certain matters, he assigned greater weight to other expert opinions that he found to be better informed, (R. 21), he found that Ms. Walls had only mild

11

limitations in social functioning, (R. 15), and he found that her ability to perform simple, repetitive sedentary work was not prevented by any deficiencies in social interaction.

**d. Failed to confront Ms. Chabal's report of social and work interaction difficulties and Ms. Johnson's report of limitations.** Ms. Walls argues that the ALJ "failed to confront" the report of Ms. Chabal (Ms. Walls' job coach at the transitional group home) that Ms. Walls had difficulty getting along with others and interacting appropriately with supervisors and co-workers. (*Plaintiff's Brief* at 22; R. 186 (checked "Getting Along With Others" box for items that Ms. Walls' conditions affect), 188 ("Due to medications and lack of medications she has . . . struggled with appropriate interactions with supervisors & co-workers.")) She also argues that the ALJ "failed to confront" the report of Ms. Johnson (a staff member at the transitional group home) that Ms. Walls requires close supervision, requires one-step instructions, is easily distracted and confused, and had crying spells three days in a week. (*Plaintiff's Brief* at 22; R. 201.) However, the ALJ specifically addressed the reports of Ms. Chabal and Ms. Johnson, finding them inconsistent with Ms. Walls' own statements (discussed earlier in his decision) and not well supported by the objective medical evidence, clinical findings, or treatment history. He also noted that, because neither individual is a medical or psychological expert and did not review all the evidence of record, he assigned greater weight to the opinions of the testifying medical experts and the state-agency medical consultants. (R. 22.) The ALJ also extensively discussed in his decisions his reasons for resolving discrepancies in the record and concluding that Ms. Walls has the ability to

perform and maintain simple/repetitive sedentary work and that her ability to do so, while limited, was not prevented by social interaction deficiencies. Thus, the ALJ did, in fact consider Ms. Chabal's and Ms. Johnson's reports.

Ms. Walls argues several reasons why the ALJ should have assigned "considerable weight" to Ms. Chabal's and Ms. Johnson's reports. But she is only disagreeing with the ALJ's weighing of the evidence and the Court may determine only if *his* evaluation and weighing of the evidence, and *his* ultimate conclusion, are supported by substantial evidence. Courts on judicial review do not compare ALJs' and claimants' conclusions to determine which are better. Because the threshold is so low, substantial evidence in the record could — likely would — support *both* Ms. Walls' and the ALJ's evaluations, weights, and conclusions. Therefore, merely presenting arguments why the ALJ *should have* assigned greater weight to Ms. Chabal's or Ms. Johnson's reports (*e.g.*, because they had closer and longer observation of her at the time of her residence at the group home), but not showing why *the ALJ's* conclusions are not supported by substantial evidence or are infected with legal error, is ultimately ineffective.

**e. Improperly dismissed Ms. Walls' testimony.** Ms. Walls argues that the ALJ improperly discredited her testimony about her symptoms by using the "meaningless boilerplate" criticized in *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). But the ALJ provided much more than the bare boilerplate that was criticized in *Bjornson*; he provided pages of discussion of Ms. Walls' credibility according to the factors of S.S.R. 96-7p.

Next, Ms. Walls argues that the ALJ improperly relied on her activities of daily living to discredit her testimony about the severity and limitations of her mental symptoms because (1) he ignored Ms. Johnson's report that Ms. Walls did not adequately perform daily activities at the transitional group home and (2) the Court of Appeals for the Seventh Circuit has warned about the critical difference between activities of daily living performed in the relatively sheltered environment of the home setting and performing sustained work activities under workplace demands.

First, as noted above, the ALJ did not ignore Ms. Johnson's report, having discussed it in his decision. (R. 22.) He considered her report, as did other experts in forming their opinions to which the ALJ assigned greater weight, and he articulated his evaluation sufficiently to permit the Court to trace his reasoning: the ALJ found that Ms. Walls' own more-recent reports of her activities and the report of at least one treating source regarding her activities were inconsistent with Ms. Johnson's report of Ms. Walls' activities during an earlier period, and he resolved the inconsistencies against Ms. Johnson's report. (R. 14-15, 17-18.)

Second, although the Seventh Circuit has correctly warned ALJs to be wary of drawing strong inferences of ability to perform sustained work from a claimant's daily activities, it has not declared that a claimant's daily activities cannot provide part of the bridge from the evidence to the ALJ's conclusions. In this case, after discussing Ms. Walls' daily activities, the ALJ concluded: "Thus, overall the claimant's activities of daily living demonstrated by the complete record are consistent with the ability to perform at

14

least sedentary work activities." (R. 18.) While this comes close to the line of over-valuing daily activities as an indication of the ability to perform sustained work, particularly since the ALJ did not attempt to match Ms. Walls' daily activities with the criteria of sedentary work, the ALJ did not rely solely or (taking his decision as a whole) even primarily on her daily activities to support his finding of an RFC for sedentary work. In addition, Ms. Walls' argument stops with her statement of the general principle; she does not attempt to show how the daily activities that the ALJ found are inconsistent with her ability to perform sustained sedentary work. She has presented no reason for the Court to conclude that a remand might lead to a different result.

**Conclusion**

Because Ms. Walls has not shown error in the ALJ's decision, judgment will issue affirming the Commissioner's denial of her claims for benefits.

**DONE this date: 09/30/2014**

*[Signature: Denise LaRue]*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.